PERRY *et al.*, administrators, *v.* TWEEDY, administrator.

1. In ordinary life-insurance, where no power of divestiture or to change the beneficiary is reserved in the policy, the issuance of the policy confers a vested right upon the person so named as beneficiary, and the insured can not transfer such interest to any other person without the consent of such beneficiary.

2. Where a man insured his life under a regular life policy, and designated, as the beneficiary to whom the amount of insurance should be paid at his death, his wife, her executors, administrators, or assigns, and she died before the death of the insured, without having made any assignment, her interest in the policy was an asset of her estate, and the persons who would be entitled, under the intestate laws, to share in the personal estate of such beneficiary at the time of her death would be entitled also to share in the proceeds of the policy upon the death of the insured.

3. The fact that the policy was not payable until after the death of the insured would not prevent him from being interested in the assets left by the deceased.

4. Where, after the death of the insured, the administrator of his wife, the beneficiary, collected the amount due under two such policies, there having been no children or descendants of children, and the husband having been the sole heir of the wife, and having survived her, his administrators were entitled to recover from her administrator such proceeds, to be distributed as his estate, instead of being distributed among the mother, brothers, and sisters of the beneficiary.

5. No question is raised as to whether there were any debts of the beneficiary, or whether, upon the collection of the proceeds of the policies by the administrator of the beneficiary, such indebtedness should be paid therefrom, before payment of the same to the administrators of the husband.

6. There is a difference between a certificate of membership in a mutual benefit association and an ordinary life-insurance policy in reference to the matters dealt with in the preceding notes; and decisions made in cases arising upon mutual-benefit certificates, or by-laws of benefit societies, are distinguishable from those arising in regard to ordinary life-insurance policies.

Submitted April 24,—Decided May 17, 1907.

Equitable petition. Before Judge Lewis. Putnam superior court. July 9, 1906.

Perry and others, as administrators of Mark C. Perry, brought their action against Tweedy, as administrator of Augusta Perry, alleging as follows: On February 18, 1893, Mark C. Perry obtained a policy of insurance upon his life to be issued by the Mutual Life Insurance Company of New York. By its terms it was made payable to his wife, Augusta Perry, her executors, administrators, or as-

signs. On April 2, 1894, he obtained another policy, similar to the first. Mrs. Perry died intestate some six years before her husband, having had no children and leaving her husband as her sole heir. From the date of the issuance of the policies to the time of her death, and afterwards to the time of his own death, the premiums were paid by him; and at his death there was due and payable on one of the policies $1,487.50, and on the other $1,000. He died in the early part of the year 1905. Previous to this there had been no administration on the estate of Mrs. Perry, but, shortly after the death of Perry, Tweedy was appointed as administrator of her estate, and made claim for the amounts due on the policies. Payment was made to him by the company, and the sum so received is now in his hands. Plaintiffs claim, that upon the death of Mrs. Perry her interest in the policies descended to and became the property of her husband; that her mother, brothers and sisters who survive her can not in law become beneficiaries of the policies; and that plaintiffs are entitled to have the proceeds of the policies paid to them for the purpose of paying the debts of Perry and making distribution to his brothers and sisters, who are his next of kin and heirs at law. They have made demand upon Tweedy, as administrator, for such money, but he has refused their demand. They prayed for judgment, for general relief, and for process. The defendant filed a general demurrer to the petition, which was sustained, and the plaintiffs excepted.

*Crum & Jones,* for plaintiffs.

*W. F. Jenkins & Son* and *Turner & Adams,* for defendant.

LUMPKIN, J. (After stating the facts.)

According to the great weight of authority, in ordinary life-insurance, where no power of divestiture or to change the beneficiary is reserved in the policy, the issuance of the policy confers a vested right upon the person so named as beneficiary, and the insured can not transfer such interest to any other person without the consent of such beneficiary. It has been suggested that this rule may have had its origin in statutory provisions, and that legislative enactments may have had an influence in the development of the doctrine. However this may have been, the doctrine itself has become a prevailing one, regardless of statutes, and in jurisdictions where no such statutes have existed. 3 Am. & Eng. Enc. Law (2d ed.), 980 et seq., and notes; New York Life Ins. Co. *v.* Ireland (Tex.),

17 S. W. 617; Central Bank of Washington *v.* Hume, 128 U. S. 195; Hubbard *v.* Stappe, 32 Ill. App. 541. In *Smith* v. *Head,* 75 *Ga.* 755, it was held that where a husband made a policy of life-insurance payable to his wife at his death, it became her property. In the opinion Chief Justice Jackson said: "This policy, payable at her husband's death, is her property. The policy is payable to her then. It is as much hers as any other property can be, as any note payable in the future, or any fee in remainder, or any other property not to be used by her till a certain event transpires." See also *Cason* v. *Owens,* 100 *Ga.* 142, 144. A policy of life-insurance is a chose in action, even before the death of the insured. *Steele* v. *Gatlin,* 115 *Ga.* 929, 931.

These policies were on their face payable, upon the death of the insured, to his wife, her executors, administrators, and assigns. If, as just held, she had a vested interest in them, upon her death during the lifetime of the insured that vested interest or asset was as much a part of her estate as any other personal property which she may have left. Suppose that she had left a chose in action maturing, or a promissory note payable upon the death of her husband, clearly this would have been a part of her estate, and would have been dealt with as such. The fact that a life-insurance policy may be terminated by failure to pay premiums, or on other grounds stated in the contract, in no way affects the principle that it is a chose in action, and as such becomes a part of the estate of the deceased beneficiary. Mr. Joyce, after considering various decisions, states the general rule thus: "If a person designates another as beneficiary under a regular life policy, and the person designated dies before the insured, then, in the absence of anything to the contrary in the contract, the interest in the policy will pass to the executor or administrator of the beneficiary, and be subject to distribution under the intestate laws of that State. If the person designated is a wife or some near relative of the insured, and the latter would, under the intestate laws, be entitled to a share of the personal estate of such person, then, under these same laws, the executor or administrator of the insured will be entitled to the same interest in the proceeds of that policy which he would have been entitled to claim in the other personal estate of the beneficiary." 2 Joyce on Insurance, §§ 828, 829; 4 Cooley's Briefs on Ins. 3779-3780, and citations. In 3 Am. & Eng. Enc. L. (2d ed.) 987, it is said that

"The insurance policy, being an asset of the beneficiary's estate, is not regarded as being affected differently from any other asset by the beneficiary's death before that of the insured." In 4 Cooley's Briefs on the Law of Insurance, 3780, it is said: "This rule does not preclude the estate of the insured from participating in the proceeds, if the insured is, under the law of descent of property, entitled to share in the estate of the beneficiary." Many cases might be cited in support of the rules thus enunciated. Some of them will be found in the notes to the authorities above quoted. Only a few need be specially cited: Hooker v. Sugg, 102 N. C. 115 (11 Am. St. 717, and note on page 721, et seq.) ; In re Anderson's estate, 85 Penn. St. 202; In re Baltz's estate, 12 Phil. 29; In re Dobbel's Estate, 104 Cal. 432 (43 Am. St. 123) ; Appeal of Deginther, 83 Penn. 337; Olmsted v. Keyes, 85 N. Y. 593.

Without entering into a discussion of the cases which either really or apparently conflict with the ruling here made, we think that they may be divided into three classes: (1) those which turn upon some statutory provision; (2) those which depend upon the peculiar language of the policy in describing the beneficiary or beneficiaries; (3) a few which can not be sustained upon sound principle or reason. Several of the cases which actually or apparently rule differently have been overruled or disregarded in later decisions.

In *Hubbard* v. *Turner*, 93 *Ga.* 752, where a man obtained a policy upon his own life, payable to his "heirs or assigns," he never having had a wife or child, it was held that the word "heirs" was to be construed as next of kin according to the statute of distributions. In the opinion the case was distinguished from that of *Rawson* v. *Jones*, 52 *Ga.* 458, where the insured took out a policy payable to his "heirs, executors, administrators or assigns," he having never been married. In that case it was held that the policy was payable to his legal representatives, and the proceeds were assets in their hands for the payment of debts and for distribution.

Counsel for defendant in error have cited a number of cases arising upon mutual benefit certificates, or the by-laws of benefit societies, in some of which it was held that the interest of the beneficiary was not a vested right but a mere expectancy. But it is generally recognized that there is a difference between a certificate of membership in a mutual benefit association and an ordinary life-insurance policy based either upon the ground of reservations con-

tained in the charter or by-laws of the society, or upon the inherent differences in the two forms of insurance. 3 Am. & Eng. Encyc. Law (2d ed.), 990, 991, and notes; Supreme Conclave v. Cappella, 41 Fed. 1; Thomas v. Grand Lodge A. O. U. W., 12 Wash. 500; Masonic Mutual Benefit Society v. Burkhart, 110 Ind. 189; Martin v. Stubbings, 126 Ill. 387.

The wife having died without leaving any child or descendants of children, the husband was her sole heir, and, upon payment of her debts, if any, could have taken possession of her estate without administration. Civil Code of 1895, § 3354. It does not appear from the petition that he exercised this right, or that he paid her debts, if any. An administrator was appointed on her estate after his death, and received the proceeds of the policy. If the husband was her sole heir, and there were no debts of hers to be paid, her estate would be delivered to his administrator, under the statute of distributions. While there is no direct allegation that the wife left no debts, or as to the exact date of the appointment of the administrator upon her estate, or how long thereafter this suit was brought, no question was made as to these matters. The only point urged was that the administrator of the husband had no interest or right in the proceeds of the policies.

One of the policies required the payment of the stipulated premium for twenty years, and contained provisions for certain distributions of surplus after that time. But as the insured died before the twenty years had expired, this difference between the two policies is immaterial.

From what has been said it will be seen that the court erred in sustaining the demurrer and dismissing the case.

*Judgment reversed. All the Justices concur.*